IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JANICE LOTT, on behalf of herself and
all others similarly situated;
KANIKA CHEA, on behalf of herself and
all others similarly situated,

       Plaintiffs,

   v.

VIAL FOTHERINGHAM, LLP,

       Defendant.

No. 3:16-cv-00419-HZ

OPINION & ORDER

Bret Knewston
Bret Knewston, Esq.
3000 NW Stucki Pl., Ste. 230-M
Hillsboro, OR 97214

Mark. G. Passannante
Boer & Passannante, P.S.
1001 SW Fifth Ave., Ste. 1220
Portland, OR 97204

    Attorneys for Plaintiff

1 – OPINION & ORDER

Jonathan M. Radmacher
McGowen Grisvold, LLP
1100 S.W. Sixth Ave., Suit 1600
Portland, OR 97204

    Attorney for Defendant

HERNÁNDEZ, District Judge:

    Plaintiffs Janice Lott and Kanika Chea (collectively "Plaintiffs") bring claims under the Fair Debt Collection Practices Act ("FDCPA") against Defendant Vial Fotheringham, LLP. Plaintiffs allege that Defendant engaged in abusive, deceptive, and unfair debt collection efforts when attempting to collect overdue homeowners' association ("HOA") assessments.

    Before the Court are the parties' cross-motions for partial summary judgment regarding Defendant's right, or lack thereof, to impose or collect certain charges and interest. If the disputed charges and interest were not authorized by contract or by statute, then Defendant's collection of them qualifies as an unfair debt collection practice under the FDCPA. Plaintiffs argue that Defendant was not authorized to: (1) charge pre-suit attorneys' fees for collection work and for other management fees; and (2) impose contractual interest rates on prevailing-party attorneys' fees in excess of 9%. Defendant moves for summary judgment that both the charges and interest identified above are lawful. Defendant also generally moves for summary judgment that the following may be collected: unpaid assessments, late charges at a rate of 30% per unpaid assessment, costs, attorney fees, and interest on those items at rates set in the relevant HOA documents. Lastly, Defendant argues that summary judgment should be granted in its favor on all of Chea's claims against it because she signed a covenant to release any claims arising from the parties' disputes. The Court grants in part both parties' motions.

//

**BACKGROUND**

A description of Lott and Chea's allegations against Defendant can be found in the Court's prior Opinion & Order regarding Defendant's motion to dismiss. *See* Op. & Order, Aug. 23, 2016, ECF 10. In sum, Plaintiffs fell behind on paying assessments to their HOAs for the maintenance of common areas. Plaintiffs' HOAs employed Defendant as their debt collector. Defendant initiated collection lawsuits against Plaintiffs and prevailed. Defendant charged Plaintiffs for attorneys' fees associated with its collection work conducted prior to filing suit and it collected other management fees arising from Plaintiffs' communications with Defendant regarding their delinquencies. Additionally, Defendant imposed interest on attorneys' fees it was awarded as the prevailing-party in its collection lawsuits at rates of 18% against Lott and 12% against Chea respectively, which were higher than the standard statutory 9% rate. Plaintiffs contend that the charges and interest rates described above were not authorized by Plaintiffs' agreements with their HOAs or by statute.

For purposes of the motions currently before the Court, the relevant facts include the texts of the HOAs': declarations of covenants, conditions & restrictions; bylaws; and collection resolutions.

**I.      Lott**

Lott's property is subject to the rules of the Autumn Meadows Owner's Association ("AM HOA"). Zimmerman Decl. Ex. 1, ECF 31. AM HOA's declaration ("AM Declaration") provides that the AM HOA's Board of Directors ("AM Board") "may adopt, modify or revoke Rules and Regulations governing the conduct of persons and the operation or use of Lots and Common Areas" and it may levy special assessments for the maintenance of common areas. *Id.* at §§ 4.22, 5.4, 10.5. Further, the AM Board may also levy special assessments against an owner

"[t]o collect amounts due to the Association from an Owner for breach of the Owner's obligation under the Declaration, the Bylaws, or the Rules and Regulations by vote of a majority of the Board." *Id.* at § 10.6. When an owner becomes delinquent on payment of its assessments, the AM HOA, through the AM Board "or any management agent," may file a lien on the owner's deed. *Id.* at § 10.8(b). "Once filed, such lien shall accumulate all future assessments or installments, interest, late fees, penalties, fines, attorneys' fees (whether or not suitor action is instituted) and other appropriate costs properly chargeable to an Owner by the Association, until such amounts are fully paid." *Id.*

Regarding interest, fines, late fees, and penalties, the AM Board has discretion to "adopt resolutions to set the rate of interest, and to impose late fees, fines and penalties on delinquent assessments or for violations of the provisions of this Declaration, the Bylaws, any Rules and Regulation . . . ." *Id.* at § 10.8(c). The AM HOA is required to communicate any such imposition to all owners in writing at least thirty days before the effective date and "[s]uch impositions shall be considered assessments which are lienable and collectible in the same manner as any other assessment." *Id.*

The AM HOA's bylaws ("AM Bylaws") give the AM Board the authority to adopt "rules and regulations governing the use and maintenance" of common areas and to "establish fines and penalties for the violation thereof." Zimmerman Decl. Ex. 2, at § 7.1. The AM Bylaws state that owners are obligated to pay 18% interest on late assessments per annum, as well as a "one-time per assessment late charge not to exceed 30% of the delinquent amount." *Id.* at § 10.

The AM Board passed a collection resolution ("AM Resolution"), stating that under the AM Declaration and AM Bylaws, owners "shall be obligated to pay reasonable fees and costs including, but not limited to, attorney fees incurred in connection with efforts to collect

delinquent and unpaid assessments, regardless of whether suit or action is commences, and/or to enforce the provision of the Declaration, Bylaws, rules and regulations of the Act." Zimmerman Decl. Ex. 3, at 1–2. The AM Resolution also provides that the "lien amount shall include all collection costs to date, including attorney's fees and the cost of preparing and/or recording the lien." *Id.* at 2–3.

## II. Chea

Chea's property is subject to the rules of the Waterford Park Homeowners' Association ("WP HOA"). The WP HOA's declaration ("WP Declaration") states that upon a majority vote of the owners, the board of directors ("WP Board") may levy additional special assessments. Zimmerman Decl. Ex. 4, at Art. IV(3). The WP Declaration gives the WP Board discretion to charge fees for the maintenance of common areas including "the right to levy liens on any Townhomes and charge interest for any fees not paid by the Owner(s) in accordance with the provisions hereof." Zimmerman Decl. Ex. 4, at Art. II(B). Such liens include annual and special assessments "together with such interest thereon and costs of collection thereof." *Id.* at Art. IV(B)(2). If an owner becomes delinquent on their assessments, then the assessment will bear interest at 1% per month until paid. *Id.* at Art. IV(B)(3)(A). Additionally, a delinquent owner must pay a late charge of 30% of the portion of the delinquent assessment. *Id.* If the WP HOA obtains a lien judgment or decree in its favor, the WP Declaration provides that the owner shall be liable for "the Association's court costs and disbursements and reasonable attorneys' fees to be fixed by the court, such costs, disbursements and attorneys'' fees to be further secured by such lien." *Id.* at Art. IV(B)(3)(C).

The WP HOA's bylaws ("WP Bylaws") provides that the WP Declaration "shall establish a basis to assess and collect a prorate share of the annual budget from each Lot and Member and

to enforce collection thereof, including lien rights against a Lot and Member." Zimmerman Decl. Ex. 5, at Art. IX(B).

The WP HOA passed a collection resolution ("WP Resolution") stating that the "lien amount shall include all collection costs to date, including attorney's fees and the cost of preparing and/or recording the lien, any notice of lien required by law." Zimmerman Decl. Ex. 6, at 2–3. The WP Resolution also provided "that all legal fees and costs incurred in the collection of a delinquent account shall be assessed against the delinquent Owner and shall be collected as an assessment provided in the Bylaws, the Declaration." Zimmerman Decl. Ex. 5, at 3.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting former Fed. R. Civ. P. 56(c)). Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (quoting *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

//

DISCUSSION

The FDCPA is designed to eliminate abusive debt collection practices by debt collectors and to protect consumers against debt collection abuses. 15 U.S.C. § 1692. The Act states, in relevant part, that "a debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The FDCPA prohibits debt collection of any interest, fee, charge, or expense "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C § 1692f(1).

Plaintiffs' position is twofold. First, that neither Plaintiffs' HOAs' governing documents nor Oregon law authorized Defendant to charge Plaintiffs for pre-suit attorneys' fees for collection work or for other management fees. Plaintiffs do not contest that Defendant is entitled to those attorneys' fees awarded to it as the prevailing-party in its collection lawsuits. Second, Plaintiffs argue that, regarding prevailing-party attorneys' fees, Defendant is limited to imposing interest at a 9% rate under Oregon law and may not use higher contractual rates of interest.

## I. Pre-Suit Attorneys' Fees and Other Management Fees

The parties move for the Court to determine whether Defendant was authorized by Oregon law or the HOAs' governing documents to collect the challenged charges. Plaintiffs challenge Defendant's imposition of pre-suit attorneys' fees and other management fees "related to collection of assessments from non-attorneys," such as "ledger update fees," "delinquency fees," and "final notice fees." Pl.'s Mot. Summ. J. 5–6, 13, ECF 20.

Oregon Law provides that a homeowners association may:

(n) Impose charges for late payment of assessments and attorney fees related to the collection of assessments and, after giving written notice and an opportunity to be heard, levy reasonable fines for violations of the

> declaration, bylaws, rules and regulations of the association, provided that the charge imposed or the fine levied by the association is based:
>
> (A) On a schedule contained in the declaration or bylaws, or an amendment to either that is delivered to each lot, mailed to the mailing address of each lot or mailed to the mailing addresses designated in writing by the owners; *or*
>
> (B) On a resolution of the association or its board of directors that is delivered to each lot, mailed to the mailing address of each lot or mailed to the mailing addresses designated in writing by the owners[.]

Or. Rev. Stat. ("O.R.S.") § 94.630(1)(n) (emphasis added). As emphasized above, HOA boards may collect attorney fees and charges related to collection of assessments based on *either* a schedule contained in the declarations or bylaws *or* a board resolution. Furthermore, "[u]nless the declaration or bylaws provide otherwise, fees late charges, *fines and interest imposed pursuant to ORS 94.630 (1)(L), (n) and (o) are enforceable as assessments* under this section." O.R.S. § 94.709(5) (emphasis added).

The Court must also interpret the HOAs' governing documents to determine whether they authorize the disputed charges. Oregon courts follow three steps for interpreting a contractual provision, including restrictive covenants such as those contained in the HOAs' declarations and bylaws. The first step is to look at the text of the contract:

> When considering a written contractual provision, the court's first inquiry is what the words of the contract say. To determine that, the court looks at the four corners of a written contract, and considers the contract as a whole with emphasis on the provision or provisions in question. The meaning of disputed text in that context is then determined. In making that determination, the court inquires whether the provision at issue is ambiguous. Whether terms of a contract are ambiguous is a question of law. In the absence of an ambiguity, the court construes the words of a contract as a matter of law.

*Yogman v. Parrott*, 325 Or. 358, 361, 937 P.2d 1019, 1021 (1997) (quotation marks and citations omitted); *see also* O.R.S. § 42.230 (stating that when constructing an instrument, the court

should simply "ascertain and declare what it is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted" and when possible to give effect to all provisions).

Plaintiffs' argument that HOA boards can base certain charges and attorneys' fees for collection work only on the declarations or bylaws and not by resolution is unpersuasive. As noted above, O.R.S. § 94.630(n)(1) provides that HOAs may impose charges for collection work, including attorneys' fees, based on *either* the governing documents *or* a board resolution. In this case, both HOA boards passed collection resolutions authorizing Defendant to charge Plaintiffs for the disputed collection costs and attorneys' fees. Zimmerman Decl. Ex. 3, at 2–3; Ex. 6, at 3. The plain language of O.R.S. § 94.630(1)(n)(B) authorizes HOA boards to take such action. Both resolutions and O.R.S. § 94.709(5) state that these collection charges shall be collectable as assessments. *Id.*; *see also Goodsell v. Eagle-Air Estates Homeowners Ass'n*, 280 Or. App. 593, 604, 383 P.3d 365, 372–73 (2016), *review denied*, 360 Or. 752, 388 P.3d 728 (2017) (recognizing that an HOA which prevailed in its lawsuit had a right to attorneys' fees in connection with the action, even if the work was performed before the action was commenced). Accordingly, Plaintiffs have not shown that, as a matter of Oregon law, Defendant was prohibited from imposing charges for collection work. Plaintiffs' motion is therefore denied.[1]

The Court grants Defendant's motion for summary judgment that pre-suit attorneys' fees for collection work may be collected. Defendant is authorized by statute to charge Plaintiffs for those costs. However, to the extent that Defendant moves that it may also charge Plaintiffs for other management costs such as "ledger update fees," the motion is denied. Plaintiffs allege, for

---

[1] Plaintiffs' additional argument that charges cannot be imposed by non-attorney third-party management companies such as Defendant is without merit. As discussed above, both sets of relevant declarations and bylaws permit the HOA boards to hire third-parties to carry out the HOAs' obligations under the contracts. Further, the collection resolutions authorize Defendant to charge Plaintiffs for any costs associated with collecting on their delinquent assessments.

9 – OPINION & ORDER

example, that Defendant imposed charges for simply informing them of how much they owed. The parties have not clearly identified all of the challenged charges and Plaintiffs admitted that discovery is needed to establish those charges. Further, Defendant has not shown that it incurred particular losses or costs related to those charges that are attributable to Plaintiffs. The Court cannot determine whether Defendant was or was not authorized to collect on certain charges when the parties have not sufficiently described those charges. Accordingly, the parties' motions regarding other management charges are denied.

## II.     Interest Rate on Prevailing-Party Attorneys' Fees

The parties dispute whether Defendant was limited to imposing interest on prevailing-party attorneys' fees using the standard statutory rate of 9% or whether it could use higher interest rates provided in the HOAs' governing documents. Once more, the FDCPA provides that it is an unfair debt collection practice to impose interest unless that interest is "expressly authorized" by the agreement creating the debt or by law. 15 U.S.C § 1692f(1). Under Oregon law, "[i]nterest cannot be recovered in the absence of an agreement to pay interest unless authorized by statute." *Mayer v. Bassett*, 263 Or. 334, 348, 501 P.2d 782, 789 (1972). O.R.S. § 82.010(2)(d) provides that the rate of interest on "attorney fees and costs entered as part of [a] judgment" is 9% per annum. "A judgment on a contract bearing more than nine percent interest shall bear interest at the same rate provided in the contract as of the date of the entry of the judgment." O.R.S.§ 82.010(2)(e).

Defendant charged interest on prevailing-party attorneys' fees at rates of 18% against Lott and 12% against Chea based on their HOAs' governing documents. Plaintiffs contend that the interest rates on attorneys' fees awarded to Defendant as the prevailing-party in its collection actions cannot exceed 9% per year under O.R.S. § 82.010. Plaintiffs further argue that the higher

interest rates contained in the HOAs' governing documents did not apply to attorneys' fees and that the HOAs could not unilaterally pass resolutions setting interest rates higher than 9%.

## A. *Lott*

With respect to Lott, the AM Bylaws state that assessments "shall bear interest from the due date at the rate of eighteen (18%) percent per annum, or at such rate as the Board may establish from time to time, but not more than the lawful rate of interest under the laws of the State of Oregon." Zimmerman Decl. Ex. 2, at Art. X. The AM Declaration gives the AM Board the discretion to adopt resolutions setting the rate of interest. Zimmerman Decl. Ex. 1, at § 10.8(c). The AM Resolution defines "assessment" as including attorney fees and interest. Zimmerman Decl. Ex. 3, at 1.

Plaintiffs argue that the collection resolution cannot amend bylaws or declarations which require a vote of the members; nor can a resolution "create new consequences for failing to pay assessments where that consequence is already provided in the declaration or by laws." Pl.'s Reply 3, ECF 37. Plaintiffs, however, have not identified any Oregon statute or case prohibiting a HOA from collecting interest on prevailing-party attorneys' fees. Plaintiff's reliance on *P & C Constr. Co. v. Am. Diversified/Wells Park II*, is misplaced. 101 Or. App. 51, 789 P.2d 688 (1990). In that case, the Oregon Court of Appeals held that the defendant could not apply its contractual interest rate to post-judgment costs and attorneys' fees under O.R.S. § 82.010(d). *Id.* at 60, 789 P.2d at 694. *P & C Constr.* is distinguishable on several grounds. First, the contract at issue in that case involved a construction lien and its post-judgment interest rate of 12% matches the statutory rate for construction contracts. *Id.* at 58, 789 P.2d at 682–93. Second, whether the higher interest rate applied turned on issues of contractual privity not present in this case. Third, the court in that case considered attorneys' fees to be distinct from the principle amount at issue,

and therefore not susceptible to the contractual post-judgment interest rate. *Id.* at 60, 789 P.2d at 694.

In this case, however, the AM HOA was not expressly permitted by its governing documents to impose the higher contractual interest rate on prevailing-party attorneys' fees. The AM Declaration and AM Bylaws do not state that prevailing-party attorneys' fees are treated as part of the assessment and subject to the 18% interest rate. Rather, Article X of the AM Bylaws state that each member is obligated to pay the AM HOA annual and special assessments and that any assessments that are not paid within thirty days after the due day shall bear interest at a rate of 18% per year. Zimmerman Decl. Ex. 2, at Art. X. The AM Bylaws continue by stating that the AM HOA "may bring an action at law against the property for the collection of all interest, costs and reasonable attorney's fees for any such action and any appeal thereof, *all of which shall be added to the amount of such assessment*." *Id.* (emphasis added). The AM Bylaws permit the AM HOA to impose 18% interest on annual and special assessments. Any costs and attorneys' fees may be *added to the amount* of the assessment. Those costs and attorneys' fees do not become *part* of the assessment subject to the contractual interest rate. Accordingly, the AM HOA did not have the authority to use the AM Resolution to redefined assessments as including prevailing-party attorneys' fees subject to the contractual interest rate. Therefore, the contract between Lott and the AM HOA creating the debt did not expressly authorize the imposition of a higher contractual interest rate on prevailing-party attorneys' fees. The imposition of such a rate qualifies as an unfair debt collection practice under the FDCPA. 15 U.S.C § 1692f(1).

The Court grants Plaintiffs' motion for summary judgment that Defendant was unauthorized to impose its contractual interest rate of 18% on prevailing-party attorneys' fees as against Lott. Defendant's motion on this issue is denied.

### B.     *Chea*

With respect to Chea, the WP Declaration states that interest on assessments shall accrue at 1% per month (12% per year). Zimmerman Decl. Ex. 4, at Art. VII(3)(A). The WP Declaration also provides that "the Owner shall be liable for the HOA's reasonable attorneys' fees." *Id.* at Art. VII 3(C). Neither the WP Declaration nor WP Bylaws explicitly state that attorneys' fees are included in the assessments subject to the contractual 12% interest rate. Only the WP Resolution recasts attorneys' fees as assessments subject to the contractual interest rate. Zimmerman Decl. Ex. 6, at 3 ("[A]ll legal fees and costs incurred in the collection of a delinquent account shall be assessed against the delinquent Owner and shall be collected as an assessment as provided in the Bylaws, the Declaration.").

The Court agrees with Plaintiffs that Chea and the WP HOA's agreement does not authorize imposing interest at the contractual rate on prevailing-party attorneys' fees. Such an authorization is not within the four corners of the WP Declaration or WP Bylaws. In the WP Declaration, the 12% interest rate is associated only with assessments; attorneys' fees are discussed in a separate sub-provision of the document. Zimmerman Decl. Ex. 3, at Art. VII(3)(A), (C).The WP Declaration does not define assessments as including attorneys' fees. *Id.* The WP Bylaws do not mention attorneys' fees and only state that the WP Declaration shall establish the basis for collecting assessments. Zimmerman Decl. Ex. 5, at Art. IX. The WP Resolution cannot amend the terms of the WP Declaration and Bylaws by re-defining "assessments" to include attorneys' fees. Once more, under Oregon law, interest rates must be authorized by the parties' agreement. *Mayer*, 263 Or. at 348, 501 P.2d at 789. Accordingly, Defendant is not entitled to impose a 12% interest rate on prevailing-party attorneys' fees against Chea.

13 – OPINION & ORDER

Furthermore, Defendant's 12% interest rate is not authorized by statute. O.R.S. § 94.630(1)(n) only provides for the imposition of "charges for late payments of assessments and attorney fees related to the collection of assessments." That statute does not authorize Defendant to pass a resolution setting a rate of interest on attorneys' fees. The only interest rate that is applicable here and authorized by statute is the standard 9% rate under O.R.S. § 82.010(2)(d). Therefore, Plaintiffs' motion for summary judgment that Defendant cannot charge an interest rate on attorneys' fees in excess of 9% with respect to Chea is granted. Defendant's motion on the issue is denied.

### III. Defendant's Remaining Motions

As mentioned above, Defendant also moves for summary judgment regarding other charges. Plaintiffs do not dispute that Defendant may collect unpaid assessments and late charges at a rate of 30% per unpaid assessment. Defendant's motion regarding those issues is granted.

Defendant also argues that Chea signed a Covenant and Release, releasing all of her claims against Defendant.

> [Chea] releases [WP HOA], its board of directors, employees, agents, attorneys, and assigns from any and all claims [Chea] may have, whether known or unknown , that have arisen or may arise relating in any way to the disputes between [WP HOA] and [Chea] involving (a) unpaid dues or assessments, including regular and special assessments, financial penalties, late charges, and interest; (b) the lawsuit and the judgment in the above captioned matter; or (c) any matter arising from or related in any way to the aforementioned matters or any claims which arose prior to the date of execution of this Covenant and Release by Defendant.

Zimmerman Decl. Ex. 7, at 3–4. Other than providing the text of the Covenant and Release, Defendant provides no other legal authority or independent analysis supporting this argument. The text of the document alone is insufficient to show that Defendant is entitled to judgment as a matter of law. Defendant has not demonstrated that the Covenant and Release requires that

14 – OPINION & ORDER

Chea's FDCPA claims against it in this case be dismissed. Further, Defendant gives this potentially dispositive issue short shrift and Plaintiffs ignores it entirely. The Court will not attempt to flesh out legal arguments that Defendant failed to make. Defendant's motion for summary judgment on Chea's claims based on the Covenant and Release is denied.

CONCLUSION

The Court grants summary judgment that Defendant lawfully charged Plaintiffs for pre-suit attorneys' fees for collection work. The Court denies the parties' motions regarding whether Defendant lawfully charged Plaintiffs for other management fees. Regarding contractual interest rates on attorneys' fees, the Court grants summary judgment in Plaintiffs' favor as to both Lott and Chea. Defendant's unopposed motion that it may lawfully collect unpaid assessments and impose late charges at a rate of 30% per unpaid assessment against Plaintiffs is granted. Lastly, the Court denies Defendant's motion based on Chea's Covenant and Release.

IT IS SO ORDERED.

Dated this 12 day of October, 2017.

MARCO A. HERNÁNDEZ
United States District Judge